AO 106 (Rev 01/09) Application for a Search Warrant

SEALED

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JAN 22 2013
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

10176 Zapata Avenue
San Diego, CA 92126

) Case No.
)
)
)
)
)

'13MJ0257

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____California____ *(identify the person or describe property to be searched and give its location)*: See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __2252__, and the application is based on these facts:  See Attached Affidavit

☒ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's Signature

Edward Coderes, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/22/13

City and state: San Diego, CA

_____
Judge's signature

BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE
*Printed name and title*

Nguyen - 69

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Special Agent Edward Coderes upon being duly sworn do hereby state that the following is true to my knowledge and belief:

1. I am a Special Agent with Homeland Security Investigations (HSI), assigned to the Office of the Special Agent in Charge (SAC), San Diego, since January, 2004. I am currently assigned to the HSI SAC San Diego, Cyber Crimes Group (CCG) and am a full time member of the Internet Crimes Against Children (ICAC) task force in San Diego, CA. I have attended and successfully completed the Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement Special Agent Training (ICESAT) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA. I graduated from the University of San Diego with a Bachelor's of Arts degree in History. I am cross designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code. I have also received training in conducting Internet investigations regarding the sexual exploitation of minors, child pornography, and the preservation and review of computer related evidence. Throughout my tenure with HSI, I have conducted and/or participated in numerous investigations including narcotics, human smuggling, human trafficking child molestation, and child pornography investigations. As part of my duties with the ICAC task force, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252, et seq. Additionally, I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in numerous forms of media including computer media, and I have participated in the execution of numerous search and arrest warrants.

2. This affidavit is made in support of an application for a warrant to search for and seize evidence of violations of Title 18, United States Code, Section § 2252, which makes it a crime for any person to knowingly produce, possess, receive, distribute or transport any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of minors engaged in sexually explicit activity, at the location described in Attachment A, which constitutes a criminal offense as set forth more specifically in Attachment B.

3. This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation but have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence relating to violations of Title 18, United States Code § 2252, described in Attachment B, is located at the address described in Attachment A.

4. Based upon the following information, I believe there is probable cause to believe that currently located within the above-described location (See Attachment "A") there is evidence, fruits and instrumentalities of trafficking, receipt, distribution, manufacture and/or possession of visual depictions, and other related materials, involving minors engaging in sexually explicit conduct (child pornography), in violation of Title 18 U.S.C. § 2252, more particularly described in Attachment B.

### SUMMARY OF INVESTIGATION

5. The HSI San Diego, Cyber Crimes group is targeting the distribution of child pornography via peer-to-peer applications on the Internet. In particular, the HSI San Diego office is conducting undercover investigations to identify persons utilizing the Gnutella network, using peer-to-peer software on the Internet to traffic in child pornography.

6.  Based upon my knowledge, training and experience and the experience of other law enforcement personnel, I have learned that computers on the Gnutella network have software installed on them that facilitate the trading of electronic files. The software, when installed, allows the user to search for pictures, movies and other digital files by entering text as search terms.

   a.  Gnutella network users can find images and movies containing child pornography by using search terms such as "babyj." Using the "babyj" search term usually results in the searcher being presented with a listing of files that include movies of a known pre-pubescent child victim from Georgia being vaginally penetrated by an adult male.

   b.  I know from training and experience and the experience of other law enforcement personnel that the search results that are presented to the user allow the user to select a file and then receive that file from other users around the world. Often these users can receive the selected file from numerous sources at once. The software can balance the network load and recover from network failures by accepting pieces of the file from different users and then reassembling the file on the local searching computer.

   c.  I know from training and experience and the experience of other law enforcement personnel that the Gnutella network can only succeed in reassembling the file from different parts and different providers if the parts all come from the exact same file. I know that multiple persons sharing one movie can deliver different pieces of that movie to the local Gnutella compatible software and the local software can insure a complete and exact copy can be made from the parts.

   d.  The computer software has different methods to insure that two files are exactly the same. I know from training and experience and the experience of other law enforcement that the method used by the Gnutella network involves a file encryption method called Secure Hash Algorithm (SHA) Version 1 or SHA 1. I have learned that it is the SHA, developed by the National Institute of Standards and Technology (NIST), along with the National Security Agency (NSA), for use with the Digital Signature Standard (DSS) that is specified within the Secure Hash

3

Standard (SHS). The United States of America has adopted the SHA 1 hash algorithm described herein as a Federal Information Processing Standard. The SHA 1 is called secure because it is computationally infeasible for two files with different content to have the same SHA 1 hash value.

e. Digital files can be processed by the SHA 1 process resulting in a digital signature. By comparing these signatures it can be concluded that two files that share the same digital signature are identical with a precision that greatly exceeds 99.9999 percent certainty.

f. Gnutella software system uses the SHA 1 digital signature to uniquely identify individual files.

g. Entering search terms in the Gnutella software could result in a list of SHA 1 digital signatures associated with offered files. By comparing these SHA 1 digital signatures with signatures of known files, law enforcement agents could determine which offered files contained child pornography. Law enforcement agents could then use publicly available software to request a list of Internet networked computers that are reported to have the same files for trade. This feature allows law enforcement to conduct undercover operations that involve images known to be real and identified child pornography involving identified children.

h. I know from training and experience and the experience of other law enforcement that Internet networked computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the particular IP address to access the Internet.

i. Searching the Gnutella peer-to-peer network for files containing child pornography, as described above, can result in receiving a list of IP addresses of computers that have Gnutella software installed. Further, the resulting list of IP

j.   addresses are of computers which have reported themselves as able to participate in the distribution of the sought after file.

j.   Further examination of the list of IP addresses can result in the identification of computers that are reported to be in California.

k.   I also know from training that different peer-to-peer software may display the Globally Unique Identifier (GUID) of computers offering to share files on the Gnutella network. A GUID is a pseudo-random identifier composed of both letters and numbers and is used in software applications. This GUID is produced when some peer-to-peer applications are installed on a computer. While each generated GUID is not guaranteed to be unique, the total number of unique keys is so large that the probability of the same number being generated twice is very small. When comparing these GUIDs, I can determine with a high degree of certainty that two different IP addresses that are associated with the same GUID are associated with the same computer.

l.   By using the above collected information, which is available to anyone using Gnutella compatible software, I can conclude the following: A computer, originating from an IP address located in California, with Gnutella or compatible software installed, has reported to other Gnutella networked computers that it is able to participate in the distribution of a file with a specific SHA 1 digital signature. By comparing the advertised SHA 1 digital signature with known files and their associated SHA 1 digital signature, law enforcement agents can determine if a file, advertised for distribution contains child pornography.

7. On or about October 23, 2012, I identified that IP address 66.91.246.27 with the associated Globally Unique Identifier (GUID) 7DDF0AA8B6980DDC4CAB7FF12B007400 possessed multiple suspected child pornography files available for sharing on the Gnutella network.

8.    On October 23, 2012, at approximately 23:18:20 Greenwich Mean Time (GMT), I successfully downloaded a child pornography file from a computer with assigned IP address 66.91.246.27 and operating on the Gnutella network. The downloaded file is entitled "(Pthc) Real Pedo Porn XXX! (Preteen Lolitas Frifam Hussyfan r@ygold)09". This file has a digital signature also known as Secure Hash Algorithm, Version 1 (SHA 1) value of XOU3JXFOKE6ZAKREYOXFBPOVLO4BHMQ.

    a.    I have viewed the downloaded file with the above SHA1 value and determined that it depicted child pornography. The file is a video, approximately thirteen (13) minutes and ten (10) seconds in length. The video in its entirety is a collection of videos put together into one. The scenes shown in the video might have been filmed during different times, and in different places. There also appears to be more than one female child that appeared on this video. The video begins with a scene of a female child approximately eight (8) years old slowing undressing in-front of the camera. At approximately forty-nine (49) seconds into the video it shows an adult male vaginally penetrating the child using his middle finger and moving in and out of her vagina. Then at approximately one (1) minute and twenty-eight (28) seconds into the video, the same female child is seen fondling her vagina while sitting on a table. At approximately three (3) minutes and eleven (11) seconds into the video it shows a scene of an adult male vaginally penetrating a female child's vagina using his fingers. Then at approximately four (4) minutes and fifty (50) seconds into the video, a female child is seen fondling her vagina using a foreign object. The child is seen inserting a blue colored stick in her vagina and then moving it in and out. At six (6) minutes and thirty-four (34) seconds, the female child is seen applying lubricant onto the foreign object before re-inserting it in into her vagina. At approximately seven (7) minutes and thirty-three (33) seconds it shows an adult male vaginally penetrating a female child's vagina using his middle finger. Then at seven (7) minutes and fifty-two (52) seconds it shows a scene of a half-naked female

child approximately eight (8) years of age bent over on top of a table with her vagina fully exposed towards the focused camera. Then a half-naked adult male approaches the child and penetrates the child's vagina using his fingers. At approximately eight (8) minutes and eighteen (18) seconds it shows a scene of a female child performing fellatio on an adult male's penis. At approximately nine (9) minutes and three (3) seconds it shows a female child on her back to the floor with an adult male fondling her vagina with his fingers. Then at approximately nine (9) minutes and nine (9) seconds it shows a scene where a half-naked adult male was forcing to penetrate a female child's vagina using his penis. At approximately nine (9) minutes and fifty-two (52) seconds into the video it shows a scene of a female child performing fellatio on an adult male. Then at approximately ten (10) minutes and thirty-seven (37) seconds it shows a scene where a blindfolded female child performing fellatio on an adult male; then at twelve (12) minutes and twenty-seven (27) seconds the adult male takes blindfolded female child's arm and directs it towards his penis and instructed her to fondle his penis until he ejaculates.

9. On November 2, 2012, I reviewed the summoned information received from Time Warner Cable / Road Runner to the subscriber utilizing IP address 66.91.246.27 on the aforementioned times. Time Warner Cable / Road Runner provided the following subscriber information:

    Name:        Dat DUONG
    Address:     10176 Zapata Avenue San Diego, CA 92126-1124
    Phone:       (858) 564-9925
    User Name:   DDUONG002@san.rr.com
    Length of RR Service: 7/7/2009-present

10. On December 12, 2012, I reviewed DHS summoned records received from Sempra Energy pertaining to the customer(s) receiving services at 10176 Zapata Avenue, San Diego, CA 92126. Sempra Energy provided the following subscriber information:

    Customer Name:   Anh Tuyet THAI

7

Account Number:    8710232712
Account Opened:    01/27/2007

11. On December 3, 2012, I reviewed information received from the California Employment Development Department (EDD) which revealed no matching employment information for Dat Tien DUONG.

12. On December 13, 2012, at approximately 1200 hours, HSI agents conducted a brief surveillance at 10176 Zapata Avenue, San Diego, CA 92126-1124. Agents observed a 2001 Suzuki Esteem bearing California license plate 4XIZ102 parked on the driveway. This vehicle is registered to Dat Tien DUONG, 10176 Zapata Avenue, San Diego, CA 92126.

13. I conducted a review of criminal history queries regarding Dat Tien DUONG through law enforcement databases which revealed no matching results.

14. Based upon the above investigation, it is believed that a person(s) at the location described in Attachment A has a sexual interest in children. Based upon my training and experience and the training and experience of other law enforcement, I know the following:

   a. Individuals who collect and distribute child pornography tend to be sexually attracted to children, their sexual arousal patterns and erotic imagery focus, in part or in whole, on children. The collection may be exclusively dedicated to children of a particular age, gender, or other set of characteristics, or it may be more diverse, representing a variety of sexual preferences, including children. Child pornography collectors express their attraction to children through the collection of sexually explicit materials involving children as well as other seemingly innocuous material related to children. These individuals may derive sexual gratification from actual physical contact with children as well as from fantasies involving the use of pictures or other visual depictions of children or literature describing sexual contact with children. The overriding motivation for the

8

collection of child pornography and erotica is to define, fuel, and validate the collector's most cherished sexual fantasies involving children. Visual depictions may range from fully clothed children engaged in non-sexual activity to nude children engaged in explicit sexual activity.

b. Individuals who collect child pornography tend to treat their material as prized possessions and are especially unlikely to part with them. Even if the collector feels threatened by exposure to law enforcement, he will usually seek to preserve his collection by hiding it better, rather than by destroying it. The collection may be culled and refined, but the size of the collection tends to increase over time. This is particularly true since digital storage media have increased in storage capacity as they have decreased in cost.

c. In fact, many collectors protect their collections by creating back-ups, sometimes multiple back-ups, of some or all of the collection. Child pornography, unlike some other kinds of contraband (e.g. drugs), is not "consumed" by the user. The "consumption" of this product results in its proliferation; more copies are generated. The very nature of computers as a means of collection, transmission, and/or storage lends itself to permanent preservation of the item. If the collector relocates, his collection almost always moves with him.

d. Individuals who collect child pornography tend to maintain and possess their material in the privacy and security of their homes or some other secure location like their vehicles where it is readily available. The collection may include sexually explicit or suggestive materials involving children, such as photographs, digital images, magazines, narratives, motion pictures, DVDs, CD-ROMs, video tapes, books, slides, drawings, computer images or other visual media.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often

maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

### PRIOR ATTEMPTS TO OBTAIN DATA

15. The United States has not attempted to obtain this data by other means.

### GENUINE RISKS OF DESTRUCTION

16. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

17. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media that may contain data subject to seizure pursuant to this warrant:

#### Seizure and Retention of Instrumentalities

a. Based upon the foregoing, there is probable cause to believe that any computers and other electronic storage devices encountered during this search are instrumentalities of the enumerated offenses because there is probable cause to believe that they may contain

10

contraband and fruits of crime as provided at Rule 41(c)(2), Fed.R.Crim.P., or were used in committing crime as provided at Rule 41(c)(3). Consequently, the computers and any other electronic storage devices are subject to seizure, retention and possible forfeiture and destruction. Computers, other electronic storage devices and media confirmed onsite to contain contraband, constitute fruits of crime or to have been used to commit crime will not be returned but will be imaged offsite and analyzed as provided beginning at subparagraph (c) below. The onsite confirmation may be provided by an owner or user of the computer or storage device or, if feasible, may be obtained by conducting a limited onsite forensic examination to determine if the subject media contains any contraband or otherwise is an instrumentality. Computers and other electronic storage devices and media that are not confirmed onsite as instrumentalities will be taken offsite for imaging and preliminary analysis in accordance with subparagraph (b) below.

b. The offsite imaging and preliminary analysis of computers, other electronic storage devices and media to confirm their status as instrumentalities will be conducted within forty-five (45) days of seizure. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

c. Computers and other electronic storage devices and media that are retained as instrumentalities will not be returned to its owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted, arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Rule 41(g), Federal Rules of Criminal Procedure.

### Identification and Extraction of Relevant Data

d. A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that can be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data

storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e. Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it, when and how it was created or downloaded or copied, when was it last accessed, when was it last modified, when was it last printed and when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document never was saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard.

f. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

g. Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has become mind-boggling. For

h. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this court.

i. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## CONCLUSION

18. In conclusion, based upon the information contained in this affidavit, I have reason to believe that images, records, evidence, fruits and instrumentalities relating to violations of Title 18, United States Code, § 2252, exists. I further believe that images, evidence, fruits and instrumentalities are located at the location more particularly described in Attachment "A."

//
//
//
//
//
//
//
//
//

13

example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And, this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

## REQUEST FOR SEALING

19. This is an ongoing investigation of which the target(s) are unaware. It is very likely, based upon the above, that evidence of the crimes under investigation exists on computers subject to the control of the targets. There is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation. Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court.

Edward Coderes, Special Agent
Homeland Security Investigations
U.S. Immigration and Customs Enforcement

Subscribed and sworn to before me this 22 day of January 2013.

United States Magistrate Judge

ATTACHMENT A

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property located at 10176 Zapata Avenue, San Diego, CA 92126

    The property is a single story stucco house that is located in the north western part of Zapata Avenue. The property is light brown in color with a light pink trim and white garage door. The entrance to the house faces south on Zapata Avenue.

    There is a big bushy green tree on its front lawn covering the view of the door and front windows from the street. The address number 10176 is painted on the curb in-front of the property.

    The vehicle to be searched is as follows:

2001 Suzuki, bearing CAUS/4XIZ102; VIN: JS2GB41W715204601

The vehicle is registered to Dat Tien DUONG of 10176 Zapata Avenue, San Diego, CA 92126.

Nguyen - 84

Attachment B

Authorization is sought to search for and seize evidence that relates to the violation of Title 18, United States Code, Section 2252. Authorization to search includes any detached structures from the primary premises if such additional structures exist. This authorization includes the search of physical documents and includes electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with the "Procedures For Electronically Stored Information" provided in the affidavit submitted in support of this warrant. Items to be seized include the following:

a. All computer systems, software, peripherals and data storage devices.

b. All documents, including all temporary and permanent electronic files and records, (including, but not limited to, JPG, GIF, TIF, AVI, WAV and MPEG files) which contain, attach, or describe child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

c. User-attribution data to include data reflecting who used or controlled the computer or electronic storage device at or around the time that data reflecting criminal activity within the scope of this warrant was created, accessed, deleted, modified, copied, downloaded, uploaded or printed. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

d. Any and all materials or items which are sexually arousing to individuals who are interested in minors, but which are not in and of themselves obscene or which do not necessarily depict minors involved in sexually explicit conduct. Such material is commonly known as "child erotica" and includes written materials dealing with child pornography, sexual abuse of children, incest, child prostitution, pedophilia, nudist publications, diaries, and fantasy writings about the sexual exploitation of children.

e. Any record or document that shows the offer to transmit or receive any depictions of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

f. Electronically stored communications or messages reflecting computer on-line chat sessions or e-mail messages with any persons regarding the possession, receipt, distribution, and/or reproduction of child pornography, as defined in Title 18, United States Code, Section 2256.

g. Any documents, records, programs, or applications that identify the residents of the SUBJECT PREMISES and to identify the Internet service provided

Nguyen - 85

to the SUBJECT PREMISES,

      h.     Information and other evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; credit card information including but not limited to bills and payment records.

      i.     For any computer hard drive or other electronic media found to contain information otherwise called for by this warrant:
- (1) Evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software;
- (2) Evidence of the lack of such malicious software;
- (3) Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMs, or similar containers for electronic evidence; and
- (4) Documentation and manuals that may be necessary to access or conduct an examination of the COMPUTER

      j.     Information relating to the install date of the computer(s) operating system, presence of file-sharing programs (including install date, whether the program was set up for sharing, etc. ) or other programs for distribution of electronic files including for child pornography or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

      k.     For any cellular telephone device and any storage devices, such as SIM cards or flash memory devices attached to, inserted in or seized with the device, will be analyzed and the following data will be seized only to the extent that it contains or depicts evidence of violations of Title 18, United States Code, Section 2252, including evidence reflecting use, dominion and control of the device: All telephone numbers and direct connect numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses; and (2) Call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device; (3) Stored photographs, videos and text messages; (4) Stored electronic mail, including attachments, and voice messages and other recordings; (5) Web-browsing history and any stored web pages; (6) Stored documents and other files; (7) Stored geo-location information; and (8) Data stored in any application